**MORRIS PLAN BANK OF FORT WORTH
v. OGDEN et al.**

No. 14133.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 1, 1940.

Rehearing Denied Nov. 29, 1940.

**1000**

McGown, McGown, Godfrey & Logan, B. E. Godfrey, and John M. Scott, all of Fort Worth, for appellant.

Blalock, Blalock, Lohman & Blalock, of Marshall, Wilson, Ogden & Reichman, of Dallas, and Edward L. Peteet, of Marshall, for appellees.

DUNKLIN, Chief Justice.

This suit was instituted in the district court of Harrison County by Robert Ogden, residing in Dallas County, against J. H. Wilson, sheriff of Harrison County, and the Morris Plan Bank of Fort Worth, a private corporation, with its principal place of business in Fort Worth, Tarrant County, hereinafter referred to as the Bank. The Bank filed its plea of privilege in statutory form to be sued in Tarrant County, and it has prosecuted this appeal from an order of court overruling that plea.

The facts alleged in plaintiff's pleading as a basis for his suit and the relief sought, may be summarized as follows:

The Bank, as owner and holder of a personal judgment in its favor, rendered by the County Court at Law in Tarrant County against R. H. Ogden, H. J. Patton and Bernard Tinsley, caused an execution to be issued thereon, of date May 29th, 1939, directed to the sheriff or any constable of Harrison County. The Bank sent the writ to defendant J. H. Wilson, the sheriff who, at the Bank's direction, wrongfully levied the same upon a tract of 218 acres of land situated in Harrison County, owned by plaintiff Robert Ogden, who was not a party defendant in the County Court judgment, but an entire stranger thereto, and owed nothing therein. The land was levied on as the property of R. H. Ogden, defendant in the suit. The levy was prompted by the unwarranted assumption that Robert Ogden, the owner of the land, was one and the same person as R. H. Ogden, one of the defendants named in the County Court judgment and the execution writ issued thereon. Plaintiff alleged, "that said levy as made, constitutes and is an unlawful invasion and trespass upon the rights and property of this plaintiff and has subjected him to great damage, embarrassments and indignities; that such wrongful levy and unlawful trespass has cast a cloud upon plaintiff's title to said land and in addition thereto has disrupted, interfered with and prevented plaintiff from enjoying and realizing reasonable profits from the opera-

tion of a dairy, livestock farm and general farming enterprises, located upon such land, and has further caused plaintiff great loss in that plaintiff has been, and is, because of such wrongful levy and unlawful trespass as heretofore set out, prevented from harvesting, saving and acquiring certain crops and other products from said farm, that he would have otherwise harvested, saved, acquired and realized had such wrongful levy and unlawful trespass not been made, all of such wrongful levy and unlawful trespass, because of circumstances above set out, having damaged plaintiff to this date in the amount of $5,-000.00."

According to allegations in the third paragraph of his petition, after plaintiff was informed of said illegal levy, he informed the Bank of his ownership of the land and requested a release of the levy, which request was denied, and which was wilful, intentional and wrongful and caused plaintiff to suffer injury and damages in the further sum of $5,000.

In the fourth paragraph of the same pleading, allegations were made that after levy of the execution the Bank caused to be published in the Marshall News Messenger, a newspaper published in Marshall, Harrison County, an advertisement under the heading, "Legal Notice, sheriff's sale Real Estate", that plaintiff's said land would on a day fixed therein be sold at public vendue for cash, with the further statement that the land had been levied on as the property of R. H. Ogden, defendant in the execution; with further allegations that such publication was a slander of plaintiff's title by the Bank, made with wilful and malicious intent on the part of the Bank; by reason of all which plaintiff has suffered great loss of credit and injury to his reputation as a business man, in the further sum of $5,000.

That petition concludes as follows: "Wherefore, premises considered, plaintiff prays that defendants and each of them, be cited to appear and answer herein, that upon final hearing hereof, he have judgment for damages as alleged, and for removal of the cloud upon the title to plaintiff's land, for costs of suit, and for such other and further relief, special and general, in law and in equity, to which he may show himself justly entitled."

The foregoing petition was filed July 18th, 1939. Theretofore, on July 15th, 1939, plaintiff had prepared a separate

verified application for a temporary writ of injunction to restrain the sale of the land under the levy so made, as advertised, based on allegations of substantially the same facts as in the foregoing petition, with a further prayer that upon final hearing of that application the temporary writ of injunction be made final and permanent. That application was also filed on July 18th, 1939.

Upon the petition for injunction, the district judge endorsed his fiat directing the clerk of the court to issue the temporary writ of injunction prayed for and notice to the defendants to appear before him on July 22nd, 1939, and show cause why the temporary injunction should not be made perpetual and permanent.

On the day so appointed there was a further hearing, at which plaintiff appeared, but both defendants failed to appear. Upon that hearing the court made the following order:

"It is therefore ordered, adjudged and decreed that the defendant, The Morris Plan Bank of Fort Worth, and the defendant, J. H. Wilson and each of them, be and they are hereby permanently and perpetually enjoined from, and that each of them shall desist from, selling and/or causing to be sold and/or offering for sale the land described in plaintiff's verified application for temporary injunction filed herein on July 18th, 1939, on the first day of August, 1939, or at any time and further from interfering with, molesting or harassing plaintiff's possession, use and occupancy of said land in any manner.

"It is further ordered, adjudged and decreed by the court that plaintiff do have and recover of and from the defendants all costs in the behalf expended for all of which let writ of injunction and writ of execution issue."

On August 25th, 1939, the defendant Bank filed its plea of privilege in statutory form to be sued in Tarrant County. Also a general demurrer and general denial to plaintiff's petition.

On September 7th, 1939, plaintiff filed his duly verified controverting plea of privilege, reading:

"Plaintiff would further represent to the court that on the 18th day of July, 1939, he filed herein his petition, which petition is hereby referred to and adopted as a part of this controverting plea as though fully copied herein and plaintiff alleges that the allegations of such petition are true and correct.

"Said petition and allegation show and allege, and it is a fact, that the defendant, The Morris Plan Bank of Fort Worth, committed, within the meaning of Section 9 of Article 1995 of Vernon's Annotated Civil Statutes, a trespass, in Harrison County, Texas, upon plaintiff's lands and crops situated and growing in Harrison County, Texas.

"Plaintiff further says that this Court has venue of this cause and of the defendant, The Morris Plan Bank of Fort Worth, within the meaning and under the terms of Article 1995, R.C.S. 1925, and especially Sections 9 and 29a of said Article 1995, R.C.S. 1925 [Vernon's Ann.Civ.St. art. 1995, subds. 9, 29a]."

On September 23rd, 1939, the plea of privilege and plaintiff's controverting plea in answer thereto came on for hearing. At that hearing evidence was introduced, and at its conclusion judgment was rendered overruling the Bank's plea of privilege, to which it excepted and gave notice of appeal, in accordance with statutory requirements.

The evidence introduced showed without dispute the following facts. The writ of execution was levied by D. F. Bedell, deputy sheriff, on May 29th, 1939, and not by defendant, Sheriff Wilson. It was only an office levy. Plaintiff was not disturbed, nor was his use and occupancy interfered with in any respect. Plaintiff was the owner of the 218-acre tract levied on as the property of R. H. Ogden, upon instruction from the Bank. He was not a party to that judgment and did not owe it. When plaintiff was informed of the levy he protested to the Bank that he was not the R. H. Ogden, defendant in the writ. Thereupon the Bank promised to investigate the matter and release the levy if the facts were as plaintiff represented. Thereafter, on July 12th, Mr. John M. Scott, the duly authorized attorney and agent of the Bank, wrote attorneys of record for plaintiff an offer to release the levy or do anything necessary to correct the mistake. He made the same offer to plaintiff himself. In the absence of any response to the offers, on July 22nd, 1939, as attorney in fact for the Bank, he filed in the Deed Records of Harrison County an instrument in writing, duly acknowledged, vacating and cancelling the levy of the writ on the land in controversy and disclaiming

any interest in it by reason of the levy. On August 9th he, as such attorney, wrote a letter to attorneys for plaintiff in the case and offered on the part of the Bank to execute to plaintiff a quitclaim of any interest in the land under the levy, and made the same offer to plaintiff. Neither of those offers was accepted.

It is an established rule that upon the hearing of plaintiff's controverted plea, in reply to a plea of privilege, the nature of plaintiff's cause of action will be determined by the court as a matter of law, from allegations in the petition. 43 Tex. Jur., par. 110, p. 846, and decisions there cited.

As provided by Art. 2007, Rev.Civ. St., in his controverting plea plaintiff was required to allege the specific fact or facts relied on to fix venue in the court where the cause is pending. And upon a hearing he has the burden to sustain those allegations by competent evidence. 43 Tex.Jur. pp. 851 to 859.

Appellant insists that the controverting plea in this case did not measure up to that statutory requirement, and especially so since the allegations in plaintiff's petition, adopted in the controverting plea, consisted solely of conclusions rather than allegations of facts, and that the court erred in admitting evidence, over defendants' objections, in support of the controverting plea; citing Jarvis-Tull & Co. v. Williams, Tex.Civ.App., 114 S.W.2d 1218; H. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619; Paxton v. First State Bank of Tatum, Tex.Civ.App., 42 S.W.2d 837; Texlite, Inc. v. Pecos Mercantile Co., 128 Tex. 57, 96 S.W.2d 73.

In reply to that contention appellee cites Johnson v. Dallas Cooperage & Woodenware Co., 120 Tex. 27, 34 S.W.2d 845, 848, in which this was said: "The allegations of plaintiff's petition may, by apt language, be incorporated into, and thus become a part of, the contesting plea, but in such event they can be considered only as a predicate for the introduction of evidence, but cannot be considered evidence of any fact necessary to maintain venue."

Of like effect are Highway Motor Freight Lines v. Slaughter, Tex.Civ.App., 84 S.W.2d 533; Meadows & Co., Inc. v. Turner, Tex.Civ.App., 270 S.W. 899. See, also, 43 Tex.Jur. par. 89, p. 818, and decisions there noted

With respect to those two conflicting contentions, it is sufficient to say that we have reached the conclusion that plaintiff's petition should be construed as a suit to remove cloud from title and for damages thereto, and that the controverting plea was sufficient to present that issue. By reason thereof, venue to remove cloud from title was fixed in Harrison County by the mandatory and exclusive provisions of Exception No. 14 of Art. 1995, Rev.St.; the issuance of the temporary writ of injunction to restrain the sale of the property under the execution being interlocutory and ancillary only to the suit to remove cloud. 43 Tex.Jur. par. 28, p. 743; par. 29, p. 744; par. 31, p. 747; and decisions there noted, including Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., Tex.Com.App., 267 S.W. 688; Bender v. Damon, 72 Tex. 92, 9 S.W. 747; Smith v. Abernathy, Tex.Civ.App., 6 S.W. 2d 147; Rado Refining & Producing Co. v. Lucas, Tex.Civ.App., 93 S.W.2d 613; Guaranty Mortgage Co. v. Nowell, Tex. Civ.App., 72 S.W.2d 354; First National Bank of Electra v. Guyer, Tex.Civ.App., 40 S.W.2d 212.

Nor is plaintiff precluded from now invoking in his brief the exception in Sub. 14 of the statute, by predicating his controverting plea solely on Exceptions 9 and 29a, since he was not required to plead the particular exception applicable, evidenced by his petition showing the nature of the suit and the facts alleged in the controverting plea. American Seed Co. v. Wilson, Tex.Civ.App., 140 S.W.2d 269; Highway Motor Freight Lines v. Slaughter, Tex.Civ.App., 84 S.W.2d 533.

But in 43 Tex.Jur. par. 30, p. 746, this is said: "The term 'damages to land', as found in the statute, means 'an injury to the possession or to the freehold or estate.' 'Land', in its ordinary legal sense, comprehends everything of a fixed and permanent nature and therefore embraces growing trees. And an action for the destruction of a dwelling house is one to recover damages to land, the ownership of the house and land on which it was situated being in the same person. Not within the contemplation of the term, however, are damages caused by the burning of grass on land, or by the temporary unfitness of the land for stock and grazing purposes. But the turf or sod is a part of the land and an injury to it is an injury to the land."

The announcement is well supported by many decisions noted, such as Knight v. Houston & T. C. Ry. Co., 93 Tex. 417, 55 S.W. 558; Thomson v. Locke, 66 Tex. 383, 1 S.W. 112; Miller v. Rusk, 17 Tex. 170; Grogan-Cockran Lumber Co. v. Mc-Whorter, Tex.Civ.App., 15 S.W.2d 126, error refused.

In Traweek v. Martin Brown Co., 79 Tex. 460, 14 S.W. 564, 565, this was said: "A levy upon real estate, under our statutes, not being attended with any disturbance of the possession, use, or enjoyment of the premises by the owner, it follows that, as a general rule, such a levy can afford no ground for the recovery of actual damages."

Of like effect were Howeth v. Mills, 19 Tex. 295, and Olivares v. Garcia, 127 Tex. 112, 91 S.W.2d 1059.

On the hearing of the plea of privilege the only evidence offered by plaintiff to prove cloud of title and damages to his land was proof of his title thereto, its location in Harrison County, wrongful levy of the execution, and the sheriff's advertisement of sale. No evidence was offered to support his claim of the special damages alleged in his petition. Moreover, it is apparent from the face of that pleading that those special damages were not damages to the land recoverable under Exception 14 of the statute, and therefore no evidence to prove them could properly have been admitted, in any event.

It follows, therefore, that the venue of the suit was properly laid in Harrison County, for removal of cloud, and that proof of the facts necessary to show the wrongful levy was sufficient to support the controverting plea for that relief. But plaintiff failed to support his plea for damages to the land growing out of the levy by any competent evidence.

On July 18th, 1939, when his suit was filed, plaintiff had a good cause of action to remove cloud from title, and jurisdiction of the court then attached for that purpose. On the hearing of the plea of privilege, plaintiff had the burden of proof to show that his title was then clouded, as alleged in his plea, and his right to have the same removed by decree of court. But his right to that relief had then become moot, by defendant's release of the levy, and its determination by the court was no longer necessary. And plaintiff having failed to plead or prove any damages to the land, by

reason of the wrongful levy, there was no longer any necessity for keeping the case on the docket of the district court of Harrison County. If that hearing had been a trial of the merits of plaintiff's suit, manifestly judgment would have been rendered against him. But as venue was the only issue before the court, the plea of privilege should have been sustained.

In the case of McNeill v. Hubert, reported in 119 Tex. 18, 23 S.W.2d 331, 333, it was held by the Commission of Appeals that the dismissal by plaintiff of his suit against the defendant, pending an appeal by the latter from an order overruling his plea of privilege to remove the case to the county of his residence, had the effect to render moot defendant's asserted right to have his plea of privilege sustained. And in disposing of that question, this was said in opinion by Justice Leddy: "As long as appellee was in the attitude of prosecuting a suit against appellant in Tarrant county the question as to whether appellant was entitled to have such case tried in the county of his residence was one which he was privileged to have determined by the court, but, when such suit was abandoned, the question as to the proper forum for such a suit becomes purely an abstract one which an appellate court should decline to determine."

However, in that case plaintiff took a nonsuit of his entire cause of action, thus depriving the trial court, or any other court to which the case might be transferred, of further jurisdiction of it; while in the present case, plaintiff has not abandoned his suit, but is still insisting on a determination of its merits, and appellant is complaining of the refusal of the court to transfer the case to the district court of Tarrant County for trial on its merits; which distinguishes the two cases with respect to jurisdiction of the appellate court to determine the merits of an appeal from an order overruling a plea of privilege.

For the reasons stated, the judgment of the trial court overruling appellant's plea of privilege is reversed and judgment is here rendered sustaining that plea. Accordingly, the case is remanded to the district court of Harrison County, with instructions to the trial judge to enter an order sustaining the plea of privilege and changing the venue of the case to the district court of Tarrant County, and directing the clerk of his court to make up a transcript of all the orders made in said

cause, certifying thereto officially under the seal of court, and send it, with the original papers in the cause, to the clerk of the district court of Tarrant County.

### On Motion for Rehearing.

█ In their motion for rehearing, counsel for plaintiff earnestly insist that in the absence of any pleading by the defendant that the allegation in plaintiff's petition of cloud on his title by the unlawful levy of execution, was made for the fraudulent purpose of fixing venue of the suit in Harrison County, the trial court had no other alternative than to overrule the plea, and therefore there was no proper basis for our conclusion that plaintiff's right to still maintain the suit in Harrison County had become moot; citing several decisions, including Farmers' Seed & Gin Co. v. Brooks, 125 Tex. 234, 81 S.W.2d 675; Highway Motor Freight Lines v. Slaughter, Tex.Civ. App., 84 S.W.2d 533; Dallas Joint Stock Land Bank v. Harrison, Tex.Civ.App., 131 S.W.2d 742; Vitopil v. Gray, Tex.Civ.App., 111 S.W.2d 1202; 43 Tex.Jur. par. 119, page 862.

As shown in plaintiff's petition, which was expressly made a part of his controverting affidavit, in reply to the plea of privilege, the gravamen of his suit was to remove cloud from his title, with specific allegations that after the levy defendant had refused to release the levy of the execution upon plaintiff's request therefor. Nor did plaintiff object to the evidence introduced by defendant, showing the release of the levy on the ground that defendant had not challenged the good faith of plaintiff's allegations of an unlawful levy of the execution in Harrison County.

In further support of our conclusions that plaintiff's right to maintain venue in Harrison County had become moot, a multitude of other decisions might be added, including those cited in support of this announcement in 3 Tex.Jur. par. 25, page 69:

"A case is said to be moot when the question to be determined is abstract, that is, one which does not rest upon existing facts or rights, as when the right that was involved in the action no longer exists or has abated on the death of the defendant. A similar condition has been held to arise when the owner has sold premises alleged to have been kept as a nuisance or when the subject matter of the litigation has been disposed of by legislation. And where the sole relief sought is the cancellation of a lease which already has been canceled, the case is clearly moot.

"An appellate court may receive extraneous proof to the effect that the issues involved in an appeal have become moot. And it is well settled that if, pending review of a judgment of the lower court, an event intervenes which renders it impossible to grant effectual relief, the court will not proceed to review the case but will dismiss the proceeding."

Among the decisions noted in support of that text is Richmond v. Hog Creek Oil Co., Tex.Com.App., 239 S.W. 904, 905 That was a suit to cancel an oil and gas lease. After it reached the Supreme Court, the defendant in the case, against whom cancellation was sought, filed a duly verified suggestion that the lease had been cancelled during pendency of the appeal. In the opinion of the court, the surrender and cancellation of the lease was noted, following which this was said: "Therefore, in brief, we have here a suit where the sole relief sought is the cancellation of a lease which has already been canceled. The case is now clearly moot." Citing decisions in support of that conclusion, including several by the Supreme Court. See, also, a multitude of decisions to the same effect noted in 1 Tex. Jur.Supplement (1937), pages 118 to 120, inclusive.

The decisions cited by plaintiff, noted above, did not involve the question now under discussion, and therefore they are distinguishable from those cited by us in support of the conclusions we have reached.

The motion for rehearing is overruled.